Case number 13-0285, Chicago Teachers Union v. Chicago Board of Education. And this is our only case. With the lawyers who are going to argue, please approach the bench and introduce yourselves, please. Lee Lever, on behalf of the Chicago Board of Education. Curtis Hale, on behalf of the Chicago Teachers Union. Sherilyn Purcell, Assistant Attorney General, on behalf of the Illinois Educational Labor Relations. Okay, have the two of you figured out how you're going to allocate your time? Yes, Your Honor. Okay. And you want some time for rebuttal? Yes, Your Honor. Okay, that'll be fine. Okay, let's proceed. Your Honors, counsel may it please the Court. The Chicago Board of Education employs some really excellent teachers, but it also employs some teachers who might be better suited to a different line of work. The three grievance here were employed for at least two years each. A principal found each of their teaching to be unsatisfactory and asked them not to return. A second principal gave them another chance, a second chance. Did they start out as probationary? Yes, Your Honor. So they never got past that point? Exactly. All right. And two different principals decided that they should not get past that point. So I'd like to bring this down to what it means for our students, because we often don't think about that anything. I hope we think about it. But conservatively, each of these teachers would have taught about 25 students a year. We know that Grievance Best is a high school teacher, so he would have taught probably about 100 students a year. So the best case scenario is that 50 to 200 students have been affected by the poor teaching of these three grievance. Let me ask you a question. Yes, it impacts, obviously, multiple students. If the individual school initially decided not to hire someone, that's not something that would ever be subject to arbitration, is it? No. Okay. And then let's say the person lasted a year, and after the first year, the school decided not to rehire for how many probationary periods can you have? With four years, you have to be a teacher for four years, so you have three probationary periods. But can you be released after the first year? Yes. All right. After the first year, let's say that the school decided, we're definitely not going to go with this person for the next year, okay? Would that be subject to any arbitration? No. All right. So let me ask you this. This is a situation where the charge is or the complaint is that they were entitled to have a letter in their file given to them at the same time that they were going to put a do not hire in the file, right? That's the collective bargaining agreement provision says that teachers and other bargaining unit members, but they weren't teachers or bargaining unit members at the time. Okay. And I'm trying to get to the point here that I want you to address, because when I asked your opponents, hiring decisions, pretty much generally, hiring and firing, or no, back off. Hiring or not to rehire a probationary teacher would never be subject to arbitration. Is that true? That's right. Okay. So how do you take that to this and say what will their response be that, well, then, why should this be arbitrated? Because it actually goes to whether or not to. It goes to the idea of not rehiring. I'm not sure. They try to make an argument that there's some rational. Well, is that too simplistic of an approach? No, Your Honor. I don't believe it is. I think that's the exact approach. We get to make a decision that we don't want these teachers to be, you know, we don't want any more students to be subjected to the poor teaching of these teachers. We've given them two years already. We don't want to subject any more students to their bad teaching. And I believe that's our managerial right. How long after they had already not been rehired did this do not hire letter make it into their files? These grievances were filed in March of 2011, January of 2011, and February of 2011. The board decided and notified the union back in May of 2010 that we were going to start this process, that we were not going to be in it. So this happened quite a long time before they filed. So they had been out of employment as far as teaching for a period of time before this policy was instituted? They, no, the policy was instituted in May of 2010. Okay. They didn't file their grievances until March, until the following year, almost a year later. Right. But when had they been previously let go? Before the, had they been let go before the new policy that put these letters in? No, they were let go after the policy. Oh, they were. Okay. Well, it is correct, isn't it, that of three of the four there was no letter placed at the same time that they were? The record doesn't really show that. It says that, it doesn't really say how they found out about it, but they just say we found, you know, after we were dismissed, we found out about it. The record isn't clear as to how they found out about it. But their union knew that this was the policy back in May of 2010. Well, wasn't the policy, though, to give them notification at the same time, like once it's put in the file, this unemployed or person you've decided not to hire or rehire or whatever is supposed to be given notice of that? No, the policy was from now on, from May 10 on, if you don't get renewed twice, we're not going to rehire you. That was the policy that was put in effect in May of 2010. The collective bargaining agreement has a provision that says if we put something in your personnel file, we have to notify, you send you a dated copy at the same time. But my contention is it doesn't apply here. And why is that? Because it applies to teachers and other bargaining unit members. At the time. Oh, I see. They were not. No, because at the time, they had already been non-renewed at that time. They were no longer teachers or bargaining unit members. They were nothing. Are probationary teachers normally bargaining unit members? Yes. Yes. Okay. So I'd like to make three main points. Before you go on that, I'd like to ask you one question. Do you agree with the board's conclusion that under the language of the CBA, a grievance may be arbitratable even if it cannot be tied to specific languages in the CBA as long as it involves a work situation? I suppose I agree with that proposition, but this is not a work situation because these people are no longer working. Okay. But it's in their file. There's a designation on their file. Actually, there aren't any personnel files anymore. It's all electronic. Well, file electronic or file manual, it's still a file. Right. And it involves a work situation, does it not? No, I don't believe it is a work situation because they're no longer working. Okay. A former working situation. That's not what the case says. Okay. It's not what the statute says. When they weren't rehired, that had already come and gone, right? A decision? It's not that they weren't rehired. They were let go. Okay. And nobody wanted to. There's nothing in the record. Well, they were let go because they weren't. Because they were bad teachers. Well, they were let go, and they could not arbitrate that fact, could they? No. But they're trying to arbitrate the fact that a letter wasn't in their file. Exactly. Regarding their not being rehired. Exactly. And what they're asking, two of them are actually asking to be rehired. Isn't there a case sort of similar to this? There are two cases sort of similar to this. Okay. The Niles Township case and the Cobden case. Who wrote that Niles Township case? It was a First District case, wasn't it? That was Justice Cahill. Yes. I think I sat on that one. I'm not sure. Yes, you did. And you joined with Justice Cahill and Justice Gordon dissented in that case. And I wanted to address that, your dissent, since you're the guy in the middle. It's probably important to discuss that. In the Cobden case, we'll start with the Niles Township case. I want to get it right. So in that case, the collective bargaining agreement said the personnel file must contain the reason for a disciplinary action. And your contention in that case in dissent was that how can it be that, you know, there was nothing here. And so isn't that a meaningless sort of right? I believe that was your argument. But in that case, Justice Quinn said actually in that personnel file, the majority said there were evaluations and those evaluations were bad. And so then we go on to the Cobden case. Where were we? We were at Cobden. Yeah, you mentioned Judge Quinn. That was Cobden. Right. He wasn't on the other. Cobden Township was the case that I believe you were on. Yes, with Justice Cahill and Justice Gordon. With Justice Cahill and Justice Gordon. Okay. And in that case, Justice Cahill made the point that in the collective bargaining agreement, again, it was supposed to be if there was a reason for disciplining someone, it should be in the personnel file. But in that case, he said that it was an interesting argument because he said that the collective bargaining agreement didn't require the evaluations to be in writing. And the actual language was the teachers to be notified of deficiencies and receive a recommendation for improvement. And I think he was taking the position that that could have been done orally and that's why nothing was in writing. But those cases, I think, are good for us because they show that in both Niles and Cobden, said that forcing the district to document the reasons not to rehire, that they're not going to keep a probationary teacher on, violates our managerial right to hire whom we want to. And that's the same proposition that we have here. But the question wasn't whether that was arbitrable in Niles. Just whether they had to include that. Or was the issue? Yes, it was whether they had to arbitrate. Okay. And the decision said they did not have to because it was a management decision of sorts. Right. Okay. What about Cobden? What can you tell us about that that supports your position? Well, it was the same situation. Do we have to give a reason in the personnel file when we're not going to keep a probationary teacher on? And the court in that case said, no, we don't. We don't have to give a reason because if we had to give a reason, that would violate our right to hire people for merit only. That's what the statute says. We hire people for merit only after satisfactory service. These grievances are not meritorious, and their service was not satisfactory. And that's why these grievances should not be arbitrable. If you don't have any other questions, I'll reserve the rest of my time. Okay. That's great. Good morning, Your Honors. Good morning. Sharon Purcell on behalf of the Illinois Educational and Labor Relations Board. This case is up on the board's determination that there was unfair labor practice because the Chicago Board of Education refused to arbitrate a set of grievances. The board's decision is a very – it's the initial step in arbitration. So what the merits of the grievances are, the labor board does not consider what it's looking at is. Well, not the merit of it, but if it's – I mean, I don't know if that argument – isn't that sort of circular? I mean, you have to look at what the complaint states in order to determine whether this should be subject to arbitration or not. You look at the grievances. Yes. What are the grievances alleging here? They're alleging various provisions, violations of various provisions of the collective bargaining agreement. You look at the collective bargaining agreement because that's the party's governing document for their workplace. And so what have they agreed to here? Well, let me ask you this. Do you agree that the decision whether to rehire a probationary person for another year, is that ever subject to arbitration? The board didn't decide. The board didn't base its decision on that. It based its decision on the broad grievance clause here, which is any work situation. I'm sorry, I don't mean to talk over you. When we're talking about, oh, this isn't a work situation, now we're talking about what does work situation mean? That's a question for the arbitrator because when the parties bargain their collective bargaining agreement, they don't bargain everything because who knows what circumstances? You can't know every circumstance that is going to come up. So there's gaps. And the bargain is then because they agree to certain terms in the agreement, meaning there's other things that are going to come up, and the bargain is. Well, how do you parse out hiring, you know, things that affect hiring one way or the other? Well, it's interesting. I mean, is it accurate to say that if the particular school decides not to hire, it doesn't have a right to arbitrate the decision not to be hired? The board found that there's a, this grievance is connected to provisions particularly to do not hire, the placing. Well, could you just. No. Because I shift to. I mean, I can see you. You can argue why this question is not this other question. But to my first question, if a school decides not to rehire someone, they've had, let's say, just one year, and there's a decision that they're not going to be someone they want to bring back for another probationary period, okay, of one year. I understand. All right. In that instance, can that person who has now been, who's not going to be rehired, can that person ever arbitrate that decision? That decision itself? Yes, the decision not to hire them. I would think that that would be difficult, but this is. There's procedures here. Okay, so you're not sure. Well, before you even get into those procedures, don't you have the right to hire and fire who you want to hire and fire? Well, there's a collective bargaining agreement. I say if it's not in the collective bargaining agreement, don't. There's no specific language in there one way or the other. If a person is a probationary teacher at the end of the year, you could let that person go if you have somebody better than that person, can't you? Getting into things that were not presented to the board here. No, but I'm trying to see why this is different. If you can simply answer, if you can't answer that yes or no, it sounds like you're going to say, well, I'm not really sure. I thought that was kind of a clear-cut issue, that management decisions to hire or fire, not fire, excuse me, but to hire someone are not something that are, if they decide to hire someone or not to rehire this probationary person, that's not subject to arbitration the way I understand it. But if I'm wrong, let me know. Well, there's certain, I mean, whether that's statutory, you know, what the school code provides or not. But then in this case. Well, I think your answer is you don't know. No, I, the board didn't address this because it wasn't. Well, okay, if you don't know, let's not guess about it. I would think. Okay, let's not guess about it. I mean, if you look at, the Supreme Court recently came down with its Grigsville Perry case, and it's very similar in a lot of ways. Well, you know, I don't think we have to go into this. I think we know the answer to this question. Let's go on to what this is all about. The question here is, is this a work situation? But that's for the arbitrator to decide whether or not, what work situation means because that's a very broad grievance clause. So if this is a work situation. Well, is it for the arbitrator to decide or is it for this court to decide? It's for the arbitrator to decide. There is a process here that it's in the act and it's traditional labor law. When parties bargain for an agreement, it's, as somebody explained it to me, it's like a traffic pattern. There's certain provisions in the agreement. There's an allegation that some one or several provisions have been violated. So there's a question there because the parties are disagreeing over whether, you know, it's arbitrable because they disagree on what these provisions mean. Well, so are you telling me that if somebody rules that a P is an elephant, that we can't, as the appellate court, say it's a P? Oh, no, I'm not. First, we're very preliminary here. Is the grievance arbitrable? If it is arbitrable and there is in the law. If it's a management decision, is it arbitrable? It depends on what is a management decision. Okay, so if it is a management decision, then it will not be subject to arbitration. If it's not a management decision, it is. Parties can bargain a lot of different provisions. Well, didn't they have a provision that said that management provisions are not subject to arbitration? They have a general reservation of rights. It's a general reservation of rights. In order to exclude something from arbitration, there has to be an express reservation. Right. Not because arbitration is favored in the law. Because this is the party's agreement. So there is an exclusion for management decisions. It's management rights. Management rights. Right. But, again, it's what does that mean. Doesn't it explicitly say under the Management Rights Clause the selection of new employees? Isn't this the selection of new employees? Unless grievances, because there is such a presumption in favor of arbitration, so that the parties will settle this between themselves within the process that is provided for collective bargaining, and this goes back to the Steelworkers Trilogy back in the 1960s explaining that arbitration is the favored method here. And it's part and parcel of the collective bargaining agreement. So what that means, because parties aren't going to have, I mean, I guess they could, but it doesn't seem like you'd ever get to an agreement, that you're going to agree to all these things. And so the agreement at that point is that they have bargained terms and conditions that they can agree on. And the agreement is then that where there's a dispute as to what those mean that aren't expressly set forth that. That doesn't answer my question. My question is, doesn't this case involve the selection of new employees? It involves a do not hire. It involves putting notices in files. Well, doesn't a decision to not hire someone, isn't it the same thing as the selection of new employees? And isn't the selection of new employees specifically reserved under the management's clause? They, but it's, again, what does this, what does all of this mean? And if you look at, and it's how you look at the grievance. What does new employee mean? If you look at, the board doesn't look at, the board does not. I'm not, I'm asking you. I'm still waiting for an answer. What's the answer to my question? I was going to bring up Staunton, for instance. All right. And in that case, they argued, the school district argued they did not have to arbitrate class assignments because that was specifically reserved to them. But the court, the board saw, the board saw the grievance as well as a salary dispute. That was not excluded. The appellate court agreed. So there's, unless you can stay positively that this grievance is not within the terms of the collective bargaining agreement, it should be arbitrable, and I mean. I'll ask you again. Isn't this election of new employees the same thing as a decision not to hire someone? I mean, it's just different words, but it's the same thing, isn't it? But what we're arguing now is the terms of the contract. Exactly. Right. And the management rights clause of the CBA reserves certain decisions to management that do not have to be arbitrated. One of those decisions, according to the CBA, is the selection of new employees. And my question is, isn't this about the selection of new employees? Those would be arguments made to the arbitrator. The board is looking at it as, here's the grievance. They're grieving that. There's a provision on the face of the contract that addresses this. So now all of these arguments are arguments, they're merits arguments. You're essentially saying that there's really nothing that isn't arbitrable. Really. You've kind of been saying that all along here this morning. There's really nothing. Everything goes. Everything. It depends on what the grievances are brought as. It depends on what the collective bargaining agreement provides. But as long as it's arguably arbitrable, and that's staunch. If you can make an argument that there's language on the face of the contract, this should go to arbitration. And the reason for that is. Well, are we going to ignore whether or not this is a new employee situation or not? I mean, do we just ignore that provision and say, it's really not there, and we're not going to decide whether it even has any applicability at all? Well, there's really not a problem with letting this go to the arbitrator, because there is language that the grievances are, you can see on the face of the contract, that they are arguably within their language of it. Then the arbitrator is going to hear all these arguments, and the parties will the board doesn't presume what arguments the parties are going to make in arbitration. It doesn't presume what the arbitrator is going to grant as a remedy. How do you distinguish Niles in the other case? Cobden? Yeah. Each of those were on their own facts and on their own collective bargaining agreements. So whether or not those grievances were tied to the collective bargaining agreement is the issue. But that's going to be. And here, the collective bargaining agreements, the grievance clause, is much broader than either of Cobden or. So when the parties bargain any work situation, these parties have been bargaining together for a long time. They understand what they're doing. It's been 35 years that they've had contracts, and they've sat down, and they've had this language. And so, I mean, it's any work situation. And to argue now before the board, well, that can't mean any work situation. That's for the arbitrator. The board is not involved in. I don't know. Are you familiar with the Chicago School Reform Board case? There were several of those. They came up under Section 14. The one in 1960. 1960? Prior to the Labor Relations Act. Well, the one that says that if there is a broad grievance clause without specific exclusions, and unless there's forceful evidence of an intent to exclude, then the matter should go to arbitration. I mean, that supports your position in the case. Yes, it does. And you're not familiar with it? Oh, I am very familiar with that. I'm not sure. Now you're familiar with it? Well, there's several of those, because they came up. I'm looking at, I mean, that's Staunton. That's several of the Chicago School Reform. I mean, doesn't that case cite a United States Supreme Court case, Warrior and Gulf? Warrior and Gulf. That's right. That's right. And Warrior and Gulf explains that arbitration is so important. No, I know what it explains, but why don't you tell us what it explains? It explains that the parties bargain collectively. They don't agree, they can't agree on everything, and arbitration is part of that. It fills in the blanks. When there's a dispute over what the collective bargaining agreement is. Well, when I read that case, you know, the words to me are that if you have a broad grievance clause without any specific exclusions, then you have to see if there's forceful evidence of an intent, and if there isn't, it goes to arbitration. Isn't that a whole series of cases holding? There is a whole series of cases that hold that. Why don't you tell us? I mean, that's what the court did here. Aren't those cases instructive to us? Yes, Your Honor. These cases describe labor law, Illinois labor law, what the General Assembly has expected under this act where it has provided for arbitration as the end point of the grievance process. Now, as far as the hiring of new employees, putting aside facts of this case, are you basically saying that if there's a question about whether something is the hiring of a new employee, then it goes to the arbitrator, or the board? The board? The board didn't, because that wasn't before them. They were looking at the entire, all of the grievances, and whether or not the language is tight. Why would a work situation basically engulf everything? It will engulf whatever the parties, I mean, they left that broad on purpose. Yeah, and so basically, isn't your position that everything is a work situation? That would be for the arbitrator. If the parties agreed to this broad language, then they know they're going to be held to that language, and they know when there's a dispute, it's going to go to arbitration. Okay, so what does this exclusion mean, then? Anything or nothing? Which exclusion? Hiring new employees. Well, that depends. I mean, that's going to be, all of that would be for the arbitrator, and the arbitrator would decide. The arbitrator determines whether something is excluded. The arbitrator decides what language means in the contract. Now, since there has to be a... Well, you're kind of telling us that management has no rights. Oh, no, not at all. Not at all. Of course they have rights. Well, what rights are left? I don't know what rights are left. But arbitration doesn't take rights away from anybody. Arbitration just... Well, in other words, everything has to be arbitrated, and management has no other rights if they don't arbitrate. Is that what you're telling us? It would depend. No, I mean, what the grievance is... You know, the greatest out that any lawyer could ever use is, well, it always depends. It doesn't always depend. But in some instances, Your Honor, I mean, whatever the management rights are, and there are going to be certain management rights. Well, you haven't told us that they have any. What they presented to the board is this D&H policy, and with several different provisions of the contract that it involved. And so what that means as to, you know, whose rights are what, and what the employer has to do, and what the employee's rights are under the contract, all of that is merits and is interpretation of the contract. All right. You're kind of running out of time. You want to give your partner some time to argue. Yes, Your Honor. Thank you. Let's see what you could do to help us. Thank you, Your Honors. May it please the Court, my name is Kurt Haley. I represent the Chicago Teachers Union. Good morning. Judge, these grievance arbitrations concern one group of employees, professionally assigned teachers, but there's two separate classifications under that. We have teachers who have been clicked off twice for non-performance reasons, and we have a teacher like Mr. Best who was clicked off once because of an unsatisfactory rating he received. Well, why do they get to arbitrate this if they can't arbitrate the decision not to hire them, why? Well, there's actually provisions in our collective bargaining agreement that allow for the arbitration of past practices and work situations, and the past practice has been with the board and the union that when you're clicked off for any reason as a PAT, you are allowed to seek continued employment with the board for at least ten months. Yes, but whether you're accepted for that, is that arbitrable? No. Okay. So why is this arbitrable then? You kind of expound on that. You can't arbitrate whether they have to give you another shot, but you can arbitrate something in your file about why they didn't give you that other shot. You can't arbitrate whether or not they can rehire you. You're right, Your Honor. So you agree with that general principle? You're not going to take a wishy-washy, we're not sure, I don't know, maybe it depends? You agree? When it comes to probationary appointed teachers, Judge, I agree. The decision to non-renew them or to rehire them is a management right. Okay. But explain then how this isn't a management right. Under the school code, Article 34.8.1, the principal is the one who makes the decision on who to appoint to a vacant position. Our contract allows for PATs who have been non-renewed, either two-click offs or been set, to give an opportunity for a ten-month opportunity to find a new position. And the principals in these cases are being precluded from making recommendations to the board to hire these PATs. And that's the decision we're seeking to have arbitrated, is whether or not the board has the right to D&H these individuals for that ten-month period, despite the fact that the contract says that they have the right to try and seek further employment within that period. Okay. Well, does this have anything to do with the hiring of new employees? Are you divorcing it completely from that provision? You're looking at Section 48-2 of the Management Rights Clause, Judge. Yes. It does say selection of new employees. Yeah. And really what we're looking at is what does the word new mean? In the case of these PATs under Article 23-2.4, you're not considering a new employee until that ten months has expired and a break in service has occurred. Is that defined somewhere? The break in service? No. You said the ten-month period. It's Article 23-2.4. Does it say a new employee is not? It doesn't specifically say new employee. What it says is that under 23-2.4 and 38-4, it's saying on a different article, PATs who are non-renewed for some reason have ten months to come back to find a position and hopefully be rehired in a position and not suffer a break in service for its tenure. This is something that the Chicago Court of Education... So from that, you're arguing that they're not new employees. That's right. They're not technically new employees until they have had that break in service. Don't they have, like for the probationary position, aren't they hired for the nine-month or whatever period of the school year it is? Aren't all of those employees off until they're rehired again in September or August? What happens with probation-appointed teachers, Your Honor, is if the court doesn't want to renew them for the following school year, they have to notify them 30 days before the end of that preceding school year. Yes. If they don't give them that 30-day notice, then they are assumed to be reappointed for the following school year. So all of these people were in that situation? They were never told they weren't going to be rehired? No. This is not a non-renewal case, Your Honor. They were properly notified 30 days before the end of the school year. To get back to a point made by the court... Okay, but could I just focus on that? Sorry. Once they are told they're not going to be employed in the upcoming year... Not renewed. Not renewed. Are you saying they're an employee then for those months? They're not technically an employee, Your Honor. Okay. They do have certain rights... Aren't they pretty much not an employee? You're right. They're not employees anymore. They've been displaced. They've been fired. Okay. So if they were to be coming back in, you're saying they wouldn't be a new employee, even though they weren't an employee during that period of time? They would not be treated as a new employee by the Chicago Board of Education. Well, forget about how they're treated. Isn't it defying logic to say that they're not employees and they won't be new employees either? There's no logic to that. I understand what you're saying, Your Honor. I'm trying to figure out how this isn't... Did you just say technically they're new hires? They would be a new hire. Okay. Isn't new hires reserved under the management rights clause to the decision of the school board? The board has the right to decide who to hire. Okay. So then what are we talking about here? Why is it arbitrable? We're talking about a designation that's been placed on their files, whether or not the board has the right to automatically just designate them ineligible for rehire, in many cases for reasons that have nothing to do with performance. And a lot of those people, there's Article 38, if you're clicked off for, say, drop in enrollment, those people technically should go under our contract. They have to go under the contract for the cadre pool, and they basically are substituting at different schools. So those people there are supposed to be working for the Board of Education. But in this case, are we talking about any of those unfortunate people that are being dropped because of lack of enrollment? Are we talking about people who actually have these letters placed in there, do not hire because of qualification problems? We have one person, Mr. Bess, who was non-renewed for an unsatisfactory rating. The other two named grievance, Ms. Abram and Ms. Rago. It's unclear what the reason was for their non-renewal. Except for Ms. Rago, it's pretty clear that she was clicked off twice. We just don't know the reason why. The grievance doesn't say why they were not renewed. Well, I still have to get back to that idea, though, that if they don't have the ability to hire because there's a lack of enrollment or whatever, it still seems to me to be we're talking about a decision whether to hire a new employee. And if that's not something subject to arbitration, I don't know why putting something in the file in regard to that is not the same thing. This is kind of like the Petard case referenced in our brief. A teacher went through the ten months in the reassigned teacher pool and was laid off. And while they were in the pool, they were supposed to receive certain rights, such as help with resumes and job searches, and that teacher didn't receive those rights. And that case was also challenged on arbitrability grounds. But as in this case, they didn't argue that those people shouldn't have been laid off. We're not arguing non-renewal here or hire. We're just saying that what their rights should have been for that ten-month period. And that's a contractual interpretation of what it means under Article 23-2.4 and Articles 38-4. What are their rights during that ten-month period? And we believe that the arbitrator should be deciding that. Even though they can't be re-hired. I mean, it might just come down to pure victory. You're right, Your Honor. But, I mean, that's part of arbitration. Well, is it true that the board found that what goes into a file for a non-hired teacher is a work situation because the information occurred while they were working? The labor board, yes. Yeah. And just to clear up one point that you made, Justice Fruitt, early on with the Board of Education, the board's policy didn't go into effect until mid-June of 2010. In order to convince people that they were properly laid off, they would have been notified of the layoff in August of 2010. So the policy went into effect after the notice. Unless you have any further questions. Thank you. And we'll hear the rebuttal. I just want to make really one point, and that's there's three categories of these probationary assigned teachers. He's saying that there's a category that gets laid off because there's a drop in enrollment. That's a different category. That's under 38-4, the collective bargaining agreement. Those people who are laid off because their school closed or there aren't enough kids, they get 12 months in the reassigned teacher pool. They can be substitutes for that time. That's not these people that we're talking about. And they wouldn't have letters like that put in their file? No, because they are still out there as substitutes, and they hopefully are looking for other jobs. So a do not hire letter would never go into a file of someone who's not being rehired at the moment because of lack of funding, because of lack of enrollments? Exactly. The best I can get out of their argument is that the reason that this is arbitrable is because it's not clear that this situation falls under the category of new employees, although they are new employees. And so, therefore, an arbitrator has to decide whether it's arbitrable. What do you understand the argument to be? I know that's the wrong question to ask you. I don't understand how it can be any more clear that the selection of new employees and the standards of service are things that are reserved to management. I don't understand their argument. What about that last point that we heard that, well, since it was something that was placed in their or a decision that was made during their employment that that was work-related, I guess. I think I heard that a minute ago. Right. Well, the policy was put into effect in June of 2010. We notified the union in May of 2010 that we were going to start doing this. The policy was put into effect. But I think the argument is that, well, the decision relates back to their performance while they were working for the school board. And so, therefore, it's work-related. Well, what they're grieving is this D&H. And that was placed on their file after they were non-renewed. So I don't see how that's a work situation because it happened. So they got non-renewed by two different principals. And then they found out that this D&H was placed on their file subsequent to their non-renewal. How could that be a work situation? It's not. Well, could it arguably be a work situation because the decision to place the D&H designation in the file was made as a result of their work? Well, if it's made as a result of their work, then we have a right to make it, right? It's a standard of service. And we have a right not to re-employ them. Thank you. Thank you. Well, thank you very much for an interesting case. Very good briefs. And we thank you for your arguments. And we'll take the case under advisory. Court is adjourned. Thank you.